1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| SEYRAN SAPONDZHYAN, | CASE NO. 08cv1443-LAB (AJB) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| JANET NAPOLITANO, Secretary of Department of Homeland Security, et al., | |
| Respondents. | |

12
13
14
15
16
17

Petitioner, a native and citizen of Armenia, filed a petition for writ of habeas corpus

18 pursuant to 28 U.S.C. § 2241 while he was in custody. Respondents filed their return and

19 Petitioner filed his traverse. After that, the immigration judge in *In re Sapondzhyan* ordered

20 Petitioner removed to Armenia and Petitioner waived appeal, rendering the removal order

21 final. Petitioner was then subject to supervised release, pending his removal. The Court

22 therefore ordered Petitioner to show cause why his petition was not moot. Following his

23 response to the order, Respondents were permitted to file their own response.

24 The petition requests that a writ of habeas corpus be granted, and that the Court

25 issue an order granting Petitioner U.S. citizenship.

26 **I.     Petitioner's Argument**

27 Petitioner was admitted to the United States in 1980 as a lawful permanent resident.

28 After conviction in 2004 for a violation of California law, he was found to be removable, but

his petition for removal was cancelled.  He was then convicted of a second violation of California law.  Petitioner was then ordered removed.

Petitioner contends that he is in fact a U.S. citizen and therefore not subject to federal custody or removal.  He bases this argument on former 8 U.S.C. § 1432 which, before it was repealed in 2000 provided for the automatic conferral of citizenship under certain conditions. Petitioner argues that he became a citizen when both his parents were naturalized while he was in the U.S. as a lawful permanent resident and before he reached the age of eighteen.  The argument is somewhat more complex than it appears, however, because while Petitioner alleges his parents' interview was conducted together and their applications for naturalization were approved at the same time (around December, 1996), his father was administered the oath of allegiance on April 23, 1997, while his mother was not accorded the opportunity to take the oath until 2000.  Petitioner turned eighteen approximately a month after his father took the oath, on May 27, 1997, and well before his mother took the oath.  Petitioner argues, however, that his mother had a "statutory right" to take the oath earlier, and alternatively argues that the formalities at her interview in December, 1996 constituted an oath.  Petitioner also asked that, if the Court found a habeas petition was not the proper vehicle to bring his claim, he be permitted to seek review of the order of removal in the Court of Appeals, or to amend his Petition to seek declaratory and injunctive relief.

## II.    Discussion

The Court must first confirm its jurisdiction before proceeding to the merits of Petitioner's claims, even if the jurisdictional question is complex and the merits question is relatively straightforward. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998). The Court may, however, address jurisdictional issues in any order.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

When Petitioner first filed his Petition, he was in federal custody and was bringing claims that he was being held in violation of U.S. law; therefore the Court would ordinarily have jurisdiction under 28 U.S.C. § 2241(c)(3) to consider the Petition.  Respondents, citing

8 U.S.C. § 1252(b)(5), *Baeta v. Sonchik*, 273 F.3d 1261, 1263 (9th Cir. 2001), and *Iasu v. Smith*, 511 F.3d 881, 887–88 (9th Cir. 2007), contended the Court lacks jurisdiction because review by the Court of Appeals is the only means of resolving questions of citizenship during removal proceedings.  Respondents argue district courts may only consider challenges to detention that are independent of challenges to removal orders.  Respondents also argued this matter cannot be transferred to the Court of appeals pursuant to 28 U.S.C. § 1631 because on the date the petition was filed the Ninth Circuit would not have been able to exercise jurisdiction.  *See Martinez-Piedras v. INS*, 354, F. Supp. 2d 1149, 1154 (S.D.Cal. 2005).  Petitioner then filed notice of the Ninth Circuit's decision in *Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008), which offers some support for his position that review is available, though Respondents argue it is distinguishable.

After the briefing setting forth these arguments was filed, the Immigration Judge found Petitioner was not a U.S. citizen and issued an order of removal.  Respondents argued the Petition had therefore become moot.  Petitioner, however, cites *Abdala v I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) as holding that because he remains under an order of supervision, he suffers a "collateral consequence" and his Petition is therefore not moot.  Other courts, however, have read *Abdala* as holding that release under an order of supervision is not a collateral consequence sufficient to render a petitioner "in custody" for habeas purposes. *See, e.g., Rodriguez-Macias v. Holder*, 2011 WL 1253742, slip op. at *3 (D.Ariz., Apr. 4, 2011) (citing *Abdala* for the principle that a habeas petitioner's release from detention under an order of supervision moots a habeas petition seeking release).

Furthermore, in its reply to Petitioner's response to the OSC, Respondent represented that Petitioner would remain out of custody under the existing conditions of release unless some change in circumstances were to occur that would legally support his re-detention. (Docket no. 13 at 7:11–16.)  Respondent has supported this representation with the declaration of Petitioner's deportation officer.  Respondent therefore relies on *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) to support its argument that a habeas petition challenging detention pending deportation becomes moot if the petitioner is released under

an order of supervision.  In theory, Petitioner could show some other collateral consequence, *see Pich Chham v. Mukasey*, 2008 WL 821536, slip op. at \*2 (C.D.Cal., March 26, 2008) (holding that mootness is not automatic following release under an order of supervision, if some other collateral consequence remains that could be redressed by success on the petition), but has not done so here.  Rather, he argues that  the possibility of being re-detained is sufficient (Docket no. 11 at 3:11–13 ("[T]he potential for the INS to resume Petitioner's detention is a realistic and ongoing fact."))  This was rejected as insufficient in *Picrin-Peron*, 930 F.2d at 776.

To the extent Petitioner is challenging the order of removal, this Court clearly lacks habeas jurisdiction. *Momeni v. Chertoff*, 521 F.3d 1094, 1095 (9th Cir. 2008).  To the extent he is challenging his detention prior to removal, the Court can exercise jurisdiction, *Flores-Torres*, 548 F.3d at 711, provided the challenge to detention can stand on its own.  *Singh v. Holder*, 638 F.3d 1196, 1212 (9th Cir. 2011) (holding *Flores-Torres* applicable only to cases where challenge to detention could stand alone, and did not require litigation of issue to be decided at removal hearing).  The problem for Petitioner is that, to the extent he is seeking release from detention, his claim has become moot.  His claim for adjudication of his citizenship cannot stand on its own, nor does the Court even have the power to consider it.  *See* 8 U.S.C. §§ 1252(b)(2), 1252(b)(5)(C), and 1503(a)(2).

The government also argues that transfer to the Ninth Circuit, which is authorized under certain circumstances to consider petitions for review, *see Iasu*, 511 F.3d at 886, is inappropriate because the Ninth Circuit would not have been able to exercise jurisdiction on the date the petition was filed.  *See Baeta*, 273 F.3d at 1264.  This is correct.  Petitioner filed his petition in this action before his removal proceedings were complete, and he did not appeal that decision.  This was the situation presented in *Taniguchi v. Schultz*, 303 F.3d 950, 956 (9th Cir. 2002), and under that holding, transfer is not permitted.

The Court therefore determines it lacks jurisdiction to consider the petition or grant Petitioner's requested relief.  The Court likewise cannot grant injunctive or declaratory relief, so Petitioner will not be given leave to amend his petition to seek them.

It may be of some small comfort to Petitioner to know that technical issues such as jurisdiction and the availability of transfer, in the end, did not change the outcome of his petition.  Even if the Court had reached the merits, his petition would have been denied. Petitioner's mother completed most citizenship requirements, but did not take her oath or satisfy the "public ceremony" requirement, nor do anything that could be considered the equivalent until well after Petitioner reached age eighteen.  The Ninth Circuit has made clear that U.S. citizenship is conferred either by birth or by naturalization, and if the latter, citizenship is not conferred until naturalization is completed.  *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964 (9th Cir. 2003) (petitioner who merely completed application for naturalization could not avoid removal on the basis that he was a U.S. national); *Gorbach v. Reno*, 219 F.3d 1087, 1089 (9th Cir. 2000) (en banc) ("The oath is an essential element in the process of becoming a naturalized citizen, conducted in a public ceremony.")

Petitioner did argue that his mother's interview fulfills the oath and public ceremony requirements, but the record does not support this.  Petitioner's mother's affidavit (*see* Pet. at 14) discusses the interview, including a question about whether she would be wiling to bear arms for the United States, and mentions signing some papers, but omits any mention of an oath. Even if she had taken an oath at the interview, the Court has found no authority for the proposition that this would be sufficient to confer citizenship.  The best authority Petitioner can muster for the proposition that his mother satisfied all requirements for naturalization is *Iasu*'s holding that such a claim fell short of being "patently frivolous." 511 F.3d at 891.  The weight of authority is against it, however.  *Id.* at 891–92 n.7 (citing *Okafor v. Gonzales*, 456 F.3d 531, 534 (5th Cir. 2006); *Abiodun v. Gonzales*, 461 F.3d 1210, 1215–16 (10th Cir. 2006); and *Tovar-Alvarez v. U.S. Atty. Gen'l*, 427 F.3d 1350, 1353 (11th Cir. 2005)).

Petitioner has claimed, not shown, that immigration officials should have administered the oath to his mother earlier.  But even assuming he is correct, the Court cannot remedy that now by granting citizenship by estoppel or exercising of the Court's equitable powers in some other way.  *See I.N.S. v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Neither by application

of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [Congressional] limitations.")

**III.      Conclusion and Order**

For the reasons set forth above, the Court finds it cannot grant the requested relief, and lacks jurisdiction to consider Petitioner's claim.  Petitioner's request for leave to amend is **DENIED** because such amendment would be futile.  All other pending requests are **DENIED AS MOOT** and all pending dates are **VACATED**.

The petition is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

DATED:  September 29, 2011

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 6 -

08cv1443